| iPLOTKIN, Judge,
Dissenting with Written Reasons.
The majority incorrectly and fallaciously interprets La.C.C. art. 966, and by direct implication La.C.C. art. 1691 and La.C.C. art. 2315.5, finding that in civil cases, as a matter of law, an heir may not be disinherited unless he or she has been convicted of intentionally killing or attempting to kill the deceased. I strongly disagree with the majority’s decision for three reasons: (1) the decision violates the established standards for appellate review of a trial court judgment granting an exception of no cause of action; (2) the majority’s focus on the word “murderer” in the title of the act which amended La.C.C.P. art. 966 results in an interpretation contrary to the legislative intent in adopting the statute, and (3) the majority fails to recognize that the act was intended to prevent heirs from inheriting when they intentionally breach a duty to provide appropriate medical care when that failure causes the patient’s death, with or without the assistance of a medical person. Thus, I respectfully dissent.

*790
Standard for review of exception of no cause of action

The majority decision includes only two sentences regarding the standard for reviewing a trial court judgment granting an exception of no cause of action. As the majority notes, when a court considers an exception of no cause of action, all well-pleaded allegations of the plaintiffs petition must be accepted as true and any doubt concerning the legal ^sufficiency of the petition must be resolved in the plaintiffs favor. City of New Orleans v. Board of Commissioners, 93-0690, p. 2 (La. 7/5/94), 640 So.2d 237, 241 (citations omitted). However, the majority neglects to note the rest of standard for granting an exception of no cause of action, which was explained by the Louisiana Supreme Court in City of New Orleans as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the non-moving party. In reviewing a trial court’s ruling sustaining an exception of no cause of action, the court of appeal and [the supreme] court should subject the case to de novo review because the exception raises a question of law and the lower court’s decision is based only on the sufficiency of the petition.
In appraising the sufficiency of the petition we follow the accepted rule that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. The petition should not be dismissed merely because plaintiffs allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide for relief on any possible theory.
As a practical matter, an exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insuperable bar to relief. In other words, dismissal is justified only when the allegations of the petition itself clearly demonstrate that the plaintiff does not have a cause of action or when its allegations indicate the existence of an affirmative defense that appears clearly on the face of the pleading.
Id. at p. 28-29; 640 So.2d at 253 (citations omitted).
Thus, this court is required to conduct a de novo review to decide whether “it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief.” Id. Further, this court must “examine the petition to determine if the allegations provide for relief on any possible theory.” Id.
Certainly, this is not a ease involving some “insuperable bar to relief’; neither is it a ease where “the allegations of the petition itself clearly demonstrate that the plaintiff does not have a cause of action or when its allegations indicate the existence of an affirmative defense that appears clearly on the face of the petition.” Id. Further, the majority’s cursory discussion of this issue indicates that its consideration of the issue was not as strict as that ^demanded by the above-quoted standard. As explained below, I believe that a proper de novo review of the allegations contained in the plaintiffs petition requires a finding that the plaintiff has stated a cause of action and thus a reversal of the trial court judgment.

Legislative intent of amendment to La.C.C. art. 966

Prior to the 1987 amendment, La.C.C. art. 966 provided, in pertinent part, as follows:
Persons unworthy of inheriting, and as such, deprived of the successions to which they are called, are the following:
1. Those who are convicted of having killed, or attempted to kill, the deceased; and in this respect they will not be the less *791 unworthy, though they may have been pardoned after their conviction.
In 1987, La.C.C. art. 966 was amended to read, in pertinent part, as follows:
Persons unworthy of inheriting, and as such, deprived of the successions to which they are called, are the following:
1. Those who are convicted of a crime involving the intentional killing or attempted killing of the deceased, or, if not convicted, who are judicially determined to have participated in the intentional, unjustified killing or attempted killing of the deceased. An executive pardon shall not restore the right to succeed.
In the same act of the legislature which amended La.C.C. art. 966, La.C.C. art. 1691, relative to revocation of testaments, was amended. Prior to 1987, that provision stated, in pertinent part, as follows:
However, in all cases, a legacy or disposition shall be deemed revoked in the event that the legatee has unlawfully taken the life of the testator, and said legacy or disposition shall be deemed not written.
The provision was amended to read, in pertinent part, as follows:
However, in all eases, a legacy or disposition shall be deemed revoked and not written when the legatee has been convicted of a crime involving the intentional killing or attempted killing of the testator or, if not convicted, is judicially determined to have participated in the intentional, unjustified killing or attempted killing of the testator. An executive pardon shall not affect the revocation.
Further, in the same year when the above provisions were amended, the legislature adopted La.C.C. art. 2315.5, which provides, in pertinent part, as follows:
Notwithstanding any other provision of law to the contrary, the surviving spouse, parent or child of a deceased, who has been convicted of a crime involving the intentional killing or attempted killing of the deceased, or, if not convicted, who has been judicially determined to have participated in the intentional, unjustified killing or attempted killing of the ^deceased, shall not be entitled to any damages or proceeds in a survival action or an action for wrongful death of the deceased, or to any proceeds distributed in settlement of any such cause of action....
An executive pardon shall not restore the surviving spouse’s, parent’s, or child’s right to any damages or proceeds in a survival action or an action for wrongful death of the deceased.
■ Obviously, these three provisions — all enacted by the same legislature and all dealing with the same subject area — should be read in pari materia. Further, both La.C.C. art. 966 and La.C.C. art. 1691 were amended in 1987 to extend the class of persons who could be disinherited to include those “who are judicially determined to have participated in the intentional, unjustified killing or attempted killing of the deceased” in addition to those “who are convicted of having killed, or attempted to kill, the deceased.” That change in the language of the statute must be interpreted to indicate an intent to change the law to include a new class of persons subject to disinherison for any involvement in the intentional, unjustified death of the decedent. The language of La.C.C. art. 2315.5 supports this interpretation, since it indicates the legislature’s intent to exclude such persons from reaping any type of reward from the death of the deceased.
The majority ignores the fact that the 1987 amendments to La.C.C. art. 966 and La.C.C. art. 1691 were obviously intended to change the law by focusing on the legislature’s use of the word “murderer” in the title to the act which effected the change, saying the use of that word is “inconsistent” with the plaintiffs’ suggestion that it should apply to “a medical determination ... to terminate life support to a comatose patient.”
First, I would note that the word “murderer” is not included in the language of the statute itself, but is found only in the title to the act which amended the statute. The title to the act is, of course, not a part of the law. Further, in my view, the use of the word “murderer” in the title is “inconsistent” with some of the express terms of the statute, since the language of the statute itself contemplates its application to everyone who has *792 “been convicted of a crime involving the intentional killing or attempted killing of the deceased, or, if not convicted, who are judicially determined to have participated in the intentional, unjustified killing or attempted killing of the deceased.” Certainly, people who have “attempted” to kill another are not commonly referred to as “murderers,” nor are those who |Bhave been “judicially determined to have participated” in the intentional death of another. Thus, the majority’s focus on the word “murderer” in the title to the act is misplaced.
Second, I believe that the plaintiffs’ allegations in the instant case are sufficient to state a cause of action under La.C.C. art. 966 against the defendants. The plaintiffs specifically alleged in paragraph 45 of their petition that the defendants “conspired to unlawfully cause [the decedent] to be removed from life support” and that they “had as their sole objective to take whatever means necessary to defeat [the decedent] from executing a new Will in order that estate could be obtained solely by the [defendants].” Those allegations, if proven, would certainly give a court grounds to “judicially determine” that the defendants “participated in the intentional, unjustified killing or attempted killing” of the decedent.

Intentional failure to provide appropriate medical care

In addition to failing to recognize the fact that the plaintiffs’ allegations are sufficient to state a cause of action, the majority improperly characterizes the defendants’ alleged actions as “a situation in which a medical determination was made to terminate life support to a comatose patient,” saying La.C.C. art. 966 was obviously not intended to apply to such a situation. At this point in this case we are not dealing with such a situation. The plaintiff’s well-pleaded allegations are to be accepted as true; the majority should not impose its interpretation of the facts, making unwarranted speculations and conclusions, when considering an exception of no cause of action.
A patient’s family and treating physician are under a duty to provide appropriate medical care. The intentional failure to provide that medical care may result in a homicide, if the patient’s death results from intentional active conduct on the part of the heir, including an omission to treat. For example, were an heir or a physician, at the urging of or with the collusion of the heir, to unplug a respirator which has supplanted a patient’s natural breathing process, that act on the part of the heir or the physician would be intentional active conduct causing the patient’s intentional, unjustified death. Similarly, when a physician intentionally fails to provide medical treatment at the request of an heir, the heir and the physician have “participated in the intentional, unjustified death of the deceased” for purposes of La. C.C. art. 966.
|6In other words, the intentional denial of medical treatment may be a cause, among other causes, that brings about a patient’s death. Under such circumstances, the intentional conduct of multiple parties, acting in concert, may cause a patient’s death. Such parties would often not be subject to criminal sanctions because of proof problems and lack of evidence. It was for these exact reasons that the legislature enacted the civil disinher-ison provisions in La.C.C. art. 966, La.C.C. art. 1691, and La.C.C. art. 2315.5. The unequivocal legislative intent was to authorize a civil procedure whereby a court could bar an heir from receiving any compensation or inheritance, if that court “judicially determined” that the heir “participated” in the intentional, unjustified death or attempted death of the deceased. This interpretation is fully consistent with Louisiana’s Natural Death Act, La.R.S. 40:1299.58.1 et seq., which recognizes a patient’s right to refuse medical treatment.
Thus, I would reverse the granting of the exception of no cause of action concerning Jules Bistes’ worthiness to inherit from his wife’s estate. Moreover, because the majority’s decision affirming the granting of the exception of no right of action concerning the plaintiffs’ claims against Jules Bistes, Audry Boyce, Christian Bistes, and Shirley Paciera is premised on the finding that the plaintiffs’ failed to state a cause of action, I would reverse on that issue also. I would also reverse the granting of Dr. Ineaprera’s and Pendleton Memorial Methodist Hospital’s ex *793 ceptions of no right of action since they are premised on the finding that the plaintiffs are not legal representatives of the deceased; if the other defendants are disinherited, the plaintiffs would become the legal representatives of the deceased.